IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD EVANS,                          :
                    Plaintiff           :
            v.                          :  Case No. 3:09-cv-17-KRG-KAP
KENNETH CAMERON, SUPERINTENDENT:
S.C.I. CRESSON, et al.,                 :
                    Defendants          :

### Order, Report and Recommendation

Recommendation and Order

        Plaintiff filed a civil complaint alleging that while he
was an inmate at S.C.I. Cresson he was attacked by fellow inmates,
then attacked again by the same inmates while reporting the
incident, as corrections officers stood around and watched.  In
addition  to  the corrections officers, plaintiff named as
defendants the warden and other supervisory personnel at the
prison who were not at the scene of the attacks, and plaintiff's
counselor and the unit manager of the portion of the prison where
he was housed, who were.  All defendants moved to dismiss, docket
no. 28.  The motion should be granted in part as discussed below.

        There are many unnecessary, redundant, or moot motions:
the Clerk can terminate as denied docket no. 9 and docket no. 11
(moot motions relating to service of the complaint), docket no.
13, docket no. 25 (unnecessary discovery motions), and docket no.
27, docket no. 31 (moot motions for extension of time).
Plaintiff's motion to amend his complaint to add a retaliation
claim against defendant Myers, docket no. 12, is granted, and

defendants' motion to dismiss is deemed to be amended to apply to the complaint as amended.

<u>Report</u>

Plaintiff asserts that on June 20, 2007, a fellow inmate named Cooper entered his cell when corrections officer Woolridge opened the door from a central control station.  Cooper then stabbed plaintiff with a shank.  An inmate named Coleman also entered the cell and assaulted plaintiff's cellmate, Richard Dixon.  When plaintiff reported the attack and his injuries to corrections officers Woolridge, Hippo, Sweet, Clawson, and a Sergeant identified as John Doe, Woolridge alone lined plaintiff and Dixon up in the common area of the Housing Unit and told plaintiff to identify his attacker.  While plaintiff did so, Cooper walked up to plaintiff and punched him in the face.  Then, as Woolridge restrained Cooper, Coleman began punching plaintiff.  This began a general melee during which, <u>inter</u> <u>alia</u>, another inmate kicked plaintiff in the face as he lay on the ground, and Dixon came to plaintiff's aid and was himself attacked.  Allegedly this went on for approximately 45 minutes before a special response team arrived, during which time the corrections officers, counselor Kukucka, and unit manager Reid stood by and did nothing to assist plaintiff.  Plaintiff alleges that he was injured.

Plaintiff adds claims against supervisory personnel: against Captain Pirozzola and Major Jadlocki, for "failing to curb

the known patterns of physical abuse of prisoners," Plaintiff's Reply Brief at 2; and against Deputy Superintendent Boyles (Broyles, according to defendants) and Warden Cameron, for "failing to train their subordinates" in how to protect inmates. Id.

Defendants raise several legal objections to plaintiff's complaint, the first of which is that he failed to exhaust his administrative remedies.  Exhaustion of a prison system's administrative remedy procedures is mandatory before an inmate files a federal lawsuit, because the Prison Litigation Reform Act of 1996 amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.§ 1997e(a), to state:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Pennsylvania Department of Corrections has an administrative procedure, DC-ADM 804, for complaints by inmates about their conditions of confinement[1].  Failure to employ it constitutes

_____

1.  DC-ADM 804 permits an inmate to express complaints "related to a problem encountered during the course of his/her confinement," DC-ADM 804 §IV-I, unless those problems relate to disciplinary procedures (DC-ADM 801), administrative custody (DC-ADM 802), or inmate mail and incoming publications (DC-ADM 803), which are the subject of separate procedures.  The regulation sets up a three level process which provides that when a timely grievance (within 15 days of the incident complained about) is filed by the inmate, an investigation by the grievance coordinator at the prison where the inmate is confined, and a written response being sent to the
(continued...)

procedural default of a claim.  See Woodford v. Ngo, 548 U.S. 81 (2006); Spruill v. Gillis, 372 F.3d 218 (3d Cir.2004).

The unusual feature in this case is that plaintiff was an inmate at the time of the attack, but was paroled on June 28, 2007, 8 days later.  His complaint was filed in early 2009, after he had been returned to prison on January 18, 2008, for violating parole.  The Court of Appeals for the Third Circuit has observed that it and every other every court of appeals to have considered the issue holds that the exhaustion requirements of the Prison Litigation Reform Act do not apply to actions filed by former prisoners.   Ahmed v. Dragovich , 297 F.3d 201, 210 n.10 (3d Cir.2002).  Here, plaintiff was certainly a prisoner when he filed his complaint, but because of the time limitation in DC-ADM 804 (requiring a grievance be filed within 15 days of the event complained about) he was a former prisoner at the time that 15 day period ran in July 2007.  Because of the same time limitation, when he was next a prisoner he could not file a timely administrative grievance concerning the events of June 20, 2007. Under such circumstances, whether one considers plaintiff a former

_____

(...continued)
inmate.  An appeal is allowed to the warden, whose review is based on the record established by the grievance coordinator.  There is a final review available at the state level which is based on the record made at the first level; final review may affirm, modify or overturn the warden's decision or order additional investigation. See  generally  Holloway  v.  Lehman,  671  A.2d  1179,  1181 (Pa.Cmwlth.1996).

prisoner with respect to the incarceration during which he was attacked, or whether one considers administrative remedies unavailable to plaintiff (in my view the better perspective), plaintiff's failure to exhaust administrative remedies should not bar his complaint.

The complaint should be dismissed, however, as to all supervisory personnel named as defendants.   In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court advised lower federal courts that in construing the adequacy of a complaint under Fed.R.Civ.P. 8, a court:

"... can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

id., 129 S.Ct. at 1950.  As applied to the warden of the prison and other supervisory personnel who were not at the scene, a conclusory claim of "failure to curb known patterns" or of "failure to train" is tantamount to pleading respondeat superior. A failure to train claim requires plausible allegations that the failure to train amounts to deliberate indifference to a person's constitutional rights.   City of Canton v. Harris, 489 U.S. 378, 388 (1989).  That state of mind, according to the Supreme Court, requires plaintiff to allege facts permitting an inference that a defendant knowingly and wilfully disregarded a danger:

5

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). The supervisory defendants, in other words, would allegedly have had to have knowingly put a policy in place which they knew trained the corrections officers on the spot to allow other inmates to attack plaintiff while plaintiff was reporting an incident. Plaintiff does not allege that, and it is difficult to imagine plausible allegations along that line. What plaintiff plainly alleges would constitute negligence, but negligence is not an actionable federal claim against the supervisory defendants.

As far as the defendants[2] on the scene, the matter should proceed to discovery. The defendant corrections officers make the point that in the midst of a general disturbance they were not required to exercise superhuman heroics and intervene when doing so would have been futile or dangerous, Defendants' Brief at 12, citing Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir.2002), and defendants Reid and Kukucka point out that security is not their

---

2. The plaintiff asserts that defendants are liable in their official and individual capacities. Only the individual capacity claims are cognizable, since defendants in their official capacities are the legal equivalent of the Commonwealth, and the Eleventh Amendment bars plaintiff's suit against the Commonwealth in this court.

responsibility at all.  However, these are defenses which are
fact-dependent and the proper subject of a motion for summary
judgment.  At this stage, given the allegations that the attack
went on for 45 minutes, whether even Reid and Kukucka knew that
they could have done something more than stand by, but chose not
to, is at least plausible.  The motion to dismiss of the
corrections officer defendants and of defendants Reid and Kukucka
in their individual capacities should be denied.

　　　　The retaliation claim against corrections officer Myers
should be dismissed.  After Mitchell v. Horn, 318 F.3d 523, 530
(3d Cir.2003), the three elements of a retaliation claim are: (1)
that the plaintiff took some action itself protected by the
constitution; (2) that the defendant took adverse action against
the plaintiff sufficient to deter a person of ordinary firmness
from persisting in his conduct; and (3) that there was a causal
connection between the plaintiff's protected conduct and the
adverse action.  Plaintiff alleges that on March 1, 2009,
corrections officer Myers shouted out to the general population at
S.C.I. Cresson that plaintiff was "a snitch."  Plaintiff does not
allege that this was in retaliation for plaintiff filing his
complaint against the corrections officers (not including Myers)
at S.C.I. Cresson, but rather for "informing the superior
administrators of Myer's conduct."  docket no. 12-2 at 4.
Plaintiff does not allege enough facts to determine whether the

7

actions he took were protected by the constitution, and he certainly does not allege he was deterred in any way from whatever conduct he was engaged in: to the contrary, plaintiff alleges he continued to complain to Lieutenant Bearjar. Most importantly, plaintiff does not allege that he suffered any harm from this alleged retaliation. The complaint against Myers should be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: _September 28 2009_          _Keith A. Pesto_
                                   Keith A. Pesto,
                                   United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

    Richard Evans BW-1187
    S.C.I. Houtzdale
    P.O. Box 1000
    Houtzdale, PA 16698-1000

8